## THE STATE v. HARMON KRUISE AND SOCRATES TUTTLE.

1. A justice of the peace, prior to the act of the twenty-first of March, 1866, had no authority to take a recognizance for the appearance, at a future day, of a person charged before him with crime.
2. A recognizance so taken was entirely void.

In debt.   On recognizance.

Harmon Kruise, one of the defendants, was brought before a justice of the peace of the county of Passaic, to answer to a criminal charge made against him.   The justice adjourned the hearing to a future day, the defendant, Kruise, entering into a recognizance before the justice, with Socrates Tuttle as his surety, with condition for his appearance before the justice at a certain time and place therein specified, to answer, &c. Kruise failed to appear, and thereupon this action was brought against the recognizors, to recover the amount of the forfeiture, as named in the recognizance.   The summons was returned *non est* as to Kruise, and served as to Tuttle.   To a declaration duly filed by the state, Tuttle put in a general demurrer.

The case was heard upon the demurrer, before the CHIEF JUSTICE, and Justices VREDENBURGH, WOODHULL, and DEPUE.

For the demurrant, *S. Tuttle.*

Prosecutor for the state, *A. B. Woodruff.*

The opinion of the court was delivered by

BEASLEY, C. J.   But a single point is raised for consideration by the demurrer in this case, viz., whether a justice of the peace, when a party is brought before him charged with crime, could, at the time. the transaction to which the suit relates, instead of committing the accused during an adjournment of the examination, take from him a recognizance, conditioned for his appearance at the adjourned day.

It is not pretended that this course of proceeding was authorized by any statute of this state, but it is claimed, that the right to take such recognizance belongs to the justice, *virtute officii.*   The counsel who advanced this claim admitted that he had failed to find a single recorded instance

State v. Kruise et al.

of the exercise of such a power by a justice of the peace, and the only authority produced by him in favor of his view was a note in *Nixon's Forms, p.* 78. When we, therefore, recollect the antiquity of the office in question, and that, from its first institution to the present time, these examinations by justices have been of hourly occurrence, it would seem to be incredible, that if the right to bail, as one of the modes of continuing such examinations, has always been possessed by such officers, no reference should have been made to it, in any of the numerous reports of decisions which have been made with regard to their proceedings, nor in any of the treatises, either ancient or modern, which prescribe, with so much particularity, the duty of the magistrate, and the entire method of procedure before him. It certainly is most strange, if this power has existed, that, in this long course of time, not a single recognizance similar in kind to the one under review, so far as appears from our judicial annals, has ever been presented for the consideration of an English court of justice. The reported cases abound, settling many points with regard to the ordinary forms of recognizance. The subject constitutes a distinct head in the most ancient, as well as in all the modern digests; and the formula of this obligation can be found in any of the books of practice; while, at the same time, it is not denied that no allusion whatever is made to that particular kind of obligation which, it is now insisted, the justice has always possessed the right to receive, and which, in the nature of things, if such right existed, would, most assuredly, have been an instrument in very frequent use. The entire duty of the justice, and the extent of his authority in conducting the preliminary examination in a criminal case, are treated of, and very clearly and minutely defined by the following authors, whose works are not only of the most approved accuracy, but are also of the highest authority. 2 *Hale P. C., ch. XIV., p.* 120; 3 *Hawk. P. C., Bk.* 2, *ch. XVI., p.* 235; 2 *Burn's Jus.,* [*by Chitty*], *tit. Examination,* § 8, *p.* 119.

Upon an examination of the foregoing treatises, it will be

perceived that they point out the course of the procedure before the justice, step by step, from the commencement to the conclusion. The power of the magistrate to commit the accused for the purposes of the examination, is thus stated and defined in one of them : " The justice," says Burns, " should take and complete the examination of all concerned, and discharge or commit the accused for trial as soon as the nature of the case will permit him ; but he is in all cases allowed a reasonable time for this purpose, before he makes his final decision. There can be no doubt a magistrate can commit for re-examination. * * * The time of detainer must be no longer than is necessary for such purpose, and the magistrate ought not, arbitrarily, to commit the party."

It would certainly appear to be in the highest degree improbable, that if this writer had supposed that the magistrate possessed the right to take bail, with a view to continue the examination before him, that he would have made no reference to it, in connection with his right to commit the accused for the same end. There is, however, no allusion to the existence of such a power. It is likewise observable, that the form of a commitment for re-examination is given ; but it is believed that no English model can be found of a recognizance containing a condition for the appearance of the culprit before the justice.

Nor, on the assumption of the existence of the form of the proceeding in question, does it appear to me less surprising that a like silence is preserved in all the judicial decisions on this subject. Some of them were of a character which, as it would seem, would have naturally evoked, either from the counsel or the court, some reference to the magistrate's right to take bail. Thus, in the cases of *Scavage* v. *Tateham*, *Cro. Eliz.* 829 ; *Davis* v. *Capper*, 10 *B. & C.* 28 ; and *Arbuckle* v. *Taylor*, 3 *Dow. Rep.* 184, the magistrate was charged with an abuse of his power of commitment, by holding the party accused for an exorbitant time ; and yet, in none of them, is it anywhere intimated that the prisoner

could have tendered bail, or that the officer could have accepted it, if it had been so tendered.

I cannot but conclude, that this perfect silence, with relation to the power to take bail in the form now in question, both in the books of practice and in judicial determinations, should be regarded as conclusive evidence of the non-existence of such power.

But again : in addition to the foregoing objections to the ground-work of the plaintiff's action in this case, it is liable to others of a theoretical nature, which in my opinion, are absolutely unanswerable. Indeed, to admit the right of the magistrate to do the act in question, and to give that act the incidents claimed for it, would be to introduce into the law a complete anomaly. The truth of this remark will, I think, at once become evident, if we consider the essential nature of a recognizance. It is not simply the acknowledgment of a debt, but it is the acknowledgment of a debt of record. Until the acknowledgment becomes the record of a court, it is not, speaking with legal exactness, a recognizance. The acknowledgment of the debt constitutes but a part of the obligation ; to its completion, filing as of record, in a court of record, is indispensable. Nor is this mere form ; for, it is to be remembered, that this species of security has, in substance, many of the qualities of a judicial record, It imports absolute verity ; its truth is no more traversable than is the truth of a judgment. In pleading, it is invariably treated as a record ; the averment is in the usual form, that it still remains in the court, and its existence, and the truth of its description, as spread out in the pleading, are verified with the customary formulá of "*pro ut patet per recordum.*" *Nul tiel record* is the only plea by which the recognizance, as an existing fact, can be put in issue. These are the attributes of all common law recognizances. 2 *Tidd* 1083 ; 2 *Saund.* 68, *a*, 1 ; *Vin. Ab., Recg., F;* 2 *Cruise* 51 ; 1 *Inst.* 380, *C.* Therefore, when a judge, or commissioner, or justice of the peace, takes a recognizance of bail, in any of the ordinary cases, either civil or criminal, such recognizance is

transmitted to. the court in which the principal counsor is recognized to appear, and is there filed, and in that manner is made a record of such court.   And it will be found that all the approved precedents of declarations on recognizances contain a statement of these facts, which are requisite to show that the acknowledgment of the debt has passed into a record.   7 *Went. Pl.* 55, *et seq.*; 3 *Chit. Pl.* 247–251. Besides this, it must be borne in mind, that the recognizance, as a judgment, binds the lands of the recognizors.   In the case of *The State* v. *Stout*, 6 *Halst.* 362, it was decided that this lien arises upon the creation of the recognizance, that is, from the moment of the acknowledgment of the debt of record.

Admitting these to be the qualities of a recognizance, I am at a loss to perceive any plausible ground on which the one now in dispute can be held to be legal.   A justice, sitting as a conservator of the peace, in the examination of a party charged with crime, does not hold a court of record. His function in this particular, is merely to inquire whether reasonable cause exist to require bail ; he cannot try the case.   The statute directs him to take the examination of the witnesses in writing, and the statement of the accused, if he is willing to make one, and then, so far from constituting such papers records, or files in the nature of records, such officer is further directed to send these proceedings, together with the recognizance, which he is required to take, if suspicion sufficiently attaches to the party inculpated, to the court having cognizance of the offence.   As a justice then holds no court of record, the mere acknowledgment of the debt in question did not amount to a recognizance.   The declaration in this case, it is true, avers that the recognizance set forth in the pleading is a record ; but, at the same time, by stating the facts of the case, it shows conclusively, that the transaction to which it refers could not have been, in any legal sense, recorded.

It was urged on the argument, that the power to admit to bail whilst the accusation of crime is undergoing exami-

nation by the magistrate, was indispensable for the preven-
tion of great oppression, as otherwise a party could be sent
to jail, who was abundantly able to give security for his ap-
pearance. But the office of justice of the peace having
existed since the reign of Edward the third, it is quite too
late to think of annexing functions to it by implication, or
on grounds of a supposed convenience. Neither is there any
reason to suppose that, practically, the hardship suggested
has ever had any existence. The justice is not obliged to
commit the party charged to prison; he can place him in
the custody of an officer, who can attend him to his own
home. The absence of the power in question may, in a few
rare instances, be attended with embarrassment, but I am
inclined to think that its presence would be accompanied
with many serious evils. If these acknowledgments before
justices are to possess the nature and efficacy of recogni-
zances, it evidently follows, that they must bind the lands
of the parties recognizing; and this result would be wholly
inconsistent with our entire system regulating the mode of
placing liens on real estate. It would introduce much con-
fusion, and would render uncertain every search for encum-
brances upon land.

The foregoing views are not without authority which will,
to a considerable extent, afford them support. In *Durling*
v. *Hubbell,* 9 *Conn.* 356, one of the grounds for the rejec-
tion of a recognizance was, that it appeared from the decla-
ration that such recognizance had not been filed in the court
in which the party accused was bound to appear. In two
cases in Massachusetts (*Bridge* v. *Ford,* 4 *Mass.* 641; *Com.*
v. *Downey,* 9 *Mass.* 520,) the court held that the allegation
that such recognizance had been transmitted to such court, was
essential to the substance of the declaration. *The State* v.
*Smith,* 6 *Greenl.* 62, rests upon a similar ground.

And in New York, in an action founded on criminal
process, it was maintained that a recognizance is not per-
fected until it is filed or recorded in the court to which it is

returnable. *The People* v. *Van Eps*, 4 *Wend.* 387 ; *The People* v. *Kane*, 18 *Denio* 534.

As the acknowledgment of the debt, made before the justice in this case, could not be entered of record in any court of record, I am of opinion that such acknowledgment is not valid as a recognizance, and that, consequently, the demurrer is well taken.

It is proper to remark, that since this cause of action arose, an act has been passed giving power to justices to take recognizances, similar to the one above declared to be invalid. A provision is incorporated in this law, directing them, upon forfeiture, to be entered of record in the Court of Oyer and Terminer. See *Acts*, 1866, *p*. 535.